UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

<u>Nicole Clough</u>

      v.                             Civil No. 20-cv-795-JL
                                        Opinion No. 2022 DNH 038

<u>Kilolo Kijakazi, Acting Commissioner</u>
<u>of Social Security</u>

## <u>ORDER ON APPEAL</u>

Nicole Clough has appealed the Social Security Administration's ("SSA") denial of her application for supplemental security income.   Clough filed her application on June 26, 2018, alleging disability as of that date.  The Administrative Law Judge ("ALJ") at the SSA denied her application, concluding that despite several severe impairments, Clough retained the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy and was therefore not disabled.  <u>See</u> 20 C.F.R. § 416.920(g).  The Appeals Council denied review of the ALJ's decision, rendering it the final decision of the Commissioner.

Clough now appeals the Commissioner's decision to this court – which has jurisdiction under 42 U.S.C. § 405(g) (Social Security) – and moves to reverse the decision.  <u>See</u> LR 9.1(c). Clough argues that the ALJ's RFC assessment cannot stand because the ALJ improperly considered and weighed certain medical opinions in the record.  The Commissioner disagrees and has cross-moved to affirm her decision.  <u>See</u> LR 9.1(d).  After careful consideration of the parties' submissions and the administrative record, the court grants Clough's motion, denies the Commissioner's motion, and remands the case for further proceedings.  The ALJ's mental RFC determination, including her decision to not impose more-restrictive mental functioning limitations, is not supported by substantial evidence and thus subject to reversal.

I.      **Applicable legal standard**

In this proceeding, the court is authorized to review the pleadings submitted by the parties and the administrative record and enter a judgment affirming, modifying, or reversing the "final decision" of the Commissioner.  See 42 U.S.C. § 405(g).  The court limits its review "to determining whether the ALJ used the proper legal standards and found facts [based] upon the proper quantum of evidence."  Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). It "review[s] questions of law de novo, but defer[s] to the Commissioner's findings of fact, so long as they are supported by substantial evidence," id., that is, "such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted).  "Substantial-evidence review is more deferential than it might sound to the lay ear: though certainly 'more than a scintilla' of evidence is required to meet the benchmark, a preponderance of evidence is not."  Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018) (citations omitted).

If the Commissioner's factual findings are supported by substantial evidence, they are conclusive, even where the record "arguably could support a different conclusion."  Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 770 (1st Cir. 1991) (per curiam).  The Commissioner's findings are not conclusive, however, "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts."  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).  "Issues of credibility and the drawing of permissible inference[s] from evidentiary facts are the prime responsibility of the Commissioner, and the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [her], not for the doctors or for the courts."  Purdy, 887 F.3d at 13 (internal quotation marks and brackets omitted).

## II.  <u>Background</u>[1]

Clough is a mother of three with an eighth-grade education.  She applied for SSI in June 2018, alleging a disability onset date of October 2, 2017.[2]  She later amended her alleged onset date to June 26, 2018.  Clough was 30 years old at the time of her alleged onset date.  She alleged she was disabled due to limitations caused by sciatica, leg pain, back pain, ankle pain, knee pain, and wrist pain.  After Clough's claim was denied at the initial level in October 2018, she timely requested a hearing before an ALJ, which occurred in August of 2019.  Clough and vocational expert Michael Dorval testified at the hearing.  The ALJ denied Clough's claim in a written decision dated October 30, 2019.

In her decision, the ALJ assessed Clough's claims under the five-step sequential analysis required by 20 C.F.R. § 416.920(a)(4).  At step one, she found that Clough had not engaged in substantial gainful activity since June 26, 2018, her alleged disability onset date.  Tr. at 14.[3]  At step two, the ALJ found that Clough's fibromyalgia, asthma, obesity, polycystic ovarian syndrome, generalized anxiety disorder, and post-traumatic stress disorder (PTSD) qualified as severe impairments.  Id.  The ALJ also found that her headaches and migraines were not severe impairments "due to a lack of objective evidence showing that this condition causes more than a minimal effect on [Clough's] ability to do basic work activities for a period of 12 consecutive

---

[1] The court recounts here only those facts relevant to the instant appeal.  Clough recites the record facts more completely in her Statement of Material Facts.  <u>See</u> doc. no. 10.  Because the Commissioner has not filed her own Statement of Material Facts, the court incorporates Clough's facts by reference.

[2] SSI is available to "disabled" claimants.  42 U.S.C. § 1382(a)(1).  To establish disability, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

[3] The court adopts the parties' preferred naming convention for the Administrative Record.

months to meet the durational requirement." Id. at 14-15.  At step three, the ALJ determined that

none of Clough's impairments, considered individually or in combination, met or medically

equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix

1.  Tr. 15.

> The ALJ then found that Clough had the RFC:
>
> to perform light work as defined in 20 CFR 416.967(b) except she cannot climb
> ladders, ropes, or scaffolds. She would have no limitation with regard to
> balancing, but other postural activities would be limited to occasional. She would
> have to avoid concentrated exposures to extreme temperatures, humidity, wetness,
> dust, fumes, odors, gases, and other pulmonary irritants. She could not be exposed
> to hazards. She can perform uncomplicated tasks (defined as tasks typically
> learned in less than 30 days). She can have incidental contact with the general
> public (dealing with the public cannot be part of job duties, but she can tolerate
> brief encounters such as passing someone in a hallway). She would need an
> environment where tasks are generally performed in a solitary manner, but can
> tolerate tandem tasks up to ten percent of the workday. She can adopt [sic] to
> routine changes.

Tr. 17.[4]

In making her RFC finding, the ALJ considered all symptoms reported by Clough and

"the extent to which those symptoms [could] reasonably be accepted as consistent with the

objective medical evidence and other evidence."  She also considered the medical opinions and

prior administrative medical findings.  Id.  The ALJ found that Clough's testimony regarding the

intensity, persistence, and limiting effects of her symptoms was not entirely consistent with, or

supported by, the medical evidence and other evidence in the record.

---

[4] "The residual functional capacity measures the maximum amount a claimant can do 'in an
ordinary work setting on a regular and continuing basis . . . [meaning] 8 hours a day, for 5 days a
week, or an equivalent work schedule,' despite the limitations caused by her impairments."
Ledoux v. Acting Comm'r, Soc. Sec. Admin., No. 17-CV-707-JD, 2018 WL 2932732, at *3
(D.N.H. June 12, 2018) (quoting Assessing Residual Functional Capacity in Initial Claims,
Social Security Ruling 96–8p, 1996 WL 374184, at *2 (July 2, 1996)); see also 20 C.F.R. §
416.945(a)(1) (defining RFC).

The ALJ considered all of the medical evidence of record, including the opinions of Clough's treating primary care physician Mary Stettmeier, M.D.; examining rheumatologist Janjua Sahar, M.D.; reviewing consultative examiner Robert N. Phelps, Jr., M.D.; state agency medical consultant Jonathan Jaffe, M.D.; treating psychologist Donna Novelli, Ph.D.; examining consultative psychologist Robert Prescott, Ph.D.; examining consultative examiner John Pelletier, Sc.D.; and state agency consultative psychologist William Jamieson, Ph.D.

In connection with her assessment of Clough's physical RFC, the ALJ found Dr. Jaffe's opinions persuasive, well-supported, and consistent with the medical evidence of record, and Dr. Phelps' March 2018 "overall opinion generally persuasive." Tr. 20. She found Dr. Sahar's opinion less persuasive on supportability grounds and Dr. Phelps' October 2018 opinion less persuasive on consistency grounds. Clough's PCP Dr. Stettmeier did not render medical "opinions" per se, so the ALJ did not explicitly assign any weight to her work. The ALJ cited to Dr. Stettmeier's treatment records, however, suggesting that she at least found them reliable. Regarding Clough's mental RFC, the ALJ found the opinions of Drs. Pelletier and Jamieson persuasive, well-supported, and consistent with the medical evidence of record. The ALJ also found Dr. Prescott's opinion partially persuasive, as it was only partially supported and generally consistent with the evidence. By contrast, she found Dr. Novelli's opinions not well explained and unpersuasive on both supportability and consistency grounds.

The ALJ then determined at step four that Clough could not perform her past relevant work as a personal care attendant or housecleaner. Tr. 24. After considering the testimony of the vocational expert, the ALJ concluded at step five that, "considering [Clough's] age, education, work experience, and [RFC]," she was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," including, as

representative examples, garment sorter laundry, laundry garment folder, and small parts
assembler.  Tr. 25-26; see 20 C.F.R. §§ 416.969 and 416.969a.  As a result, the ALJ concluded
that Clough was not disabled and had not been under a disability from June 26, 2018 through the
date of the ALJ's decision.  Tr. 26.  The Appeals Council denied review of the ALJ's decision,
rendering it the final decision of the agency.  Tr. 1-3.  This action followed.

### III.   Analysis

Clough argues that the ALJ erroneously evaluated the medical opinion evidence of record
in determining her RFC.  Specifically, she contends that the ALJ erred in her mental RFC
assessment by finding the opinion of state agency consultant Dr. Jamieson more persuasive than
the contrary opinions of treating psychologist Dr. Novelli and other providers, and by
discounting the effect of Clough's fibromyalgia on her mental impairments.  Clough further
argues that the ALJ erred in her physical RFC assessment by: (1) placing too much weight on
state agency consultant Dr. Jaffe's opinions; (2) placing too little weight on consultative
examiner Dr. Phelps' October 2018 opinion; and (3) discounting the severity of Clough's
fibromyalgia diagnosis.  After discussing the relevant standards, the court first addresses the
mental RFC assessment and finds reversible error.

#### A.   Medical opinion evidence

The ALJ's RFC assessment must be based on proper legal standards and supported by
substantial evidence.  See Nguyen, 172 F.3d at 35-36.  In determining an RFC, the ALJ must
consider limitations and restrictions imposed by all of an individual's impairments, even those
that are not "severe."  See SSR 96-8p, 1996 WL 374184 at *5.  This is typically accomplished by
"piec[ing] together the relevant medical facts from the findings and opinions of multiple
physicians."  Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987).

Because Clough filed her application after March 27, 2017, a new set of requirements governs how an ALJ reviews medical opinion evidence and explains that review in the ALJ's written decision. See 20 C.F.R. § 416.920c. Under the new rules, the "familiar and longstanding requirements – that adjudicators must assign 'controlling weight' to a well-supported treating source's medical opinion that is consistent with other evidence, and, if controlling weight is not given, must state the specific weight that is assigned—are gone." Shaw v. Saul, No. 19-CV-730-LM, 2020 WL 3072072, at *4 (D.N.H. June 10, 2020) (McCafferty, C.J.) (quoting Nicole C. v. Saul, No. CV 19-127JJM, 2020 WL 57727, at *4 (D.R.I. Jan. 6, 2020)). Instead, the ALJ neither assigns specific evidentiary weight nor defers to any medical source (including the claimant's treating providers), and "evaluates the relative persuasiveness of the medical evidence in terms of five specified factors." Shaw, 2020 WL 3072072, at * 4 (citing 20 C.F.R. § 416.920c(a)).

The five factors are: (1) supportability of the evidence; (2) consistency with the evidence; (3) the relationship between the provider and the claimant;[5] (4) specialization of the provider; and (5) "[o]ther factors," including "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA] disability program's policies and evidentiary requirements."[6] 20 C.F.R. § 416.920c(c)(1)-(5). Of these factors, supportability and consistency "are the most important" and an ALJ must explain how she "considered the supportability and consistency factors" in her decision. Id. at § 416.920c(b)(2). An ALJ need

---

[5] The third factor incorporates several sub-factors, including the length, purpose, and extent of the treatment relationship, whether the provider examined the claimant, and the frequency of any examinations. Id. at § 416.920c (c)(3)(i)-(v).

[6] When considering a medical source's familiarity with the other evidence in a claim, the ALJ must "also consider whether new evidence [she] receives after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive." Id. at § 416.920c(c)(5).

not, however, explain how she considered the other three factors.  Id.  "Only where contrary medical opinions are equally persuasive in terms of both supportability and consistency is the ALJ required to discuss their relative persuasiveness in terms of the treatment/examining relationship, specialization, and other factors."  Shaw, 2020 WL 3072072, at *5 (citing § 416.920c(b)(3)).

As for the two most important factors, supportability pertains to the relevancy of the cited medical opinions:  "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(1).  Consistency relates to how consistent the opinion is with all of the evidence from medical and non-medical sources:  "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  Id. at § 416.920c(c)(2).

### B.    The ALJ's mental RFC determination

The ALJ determined that Clough had certain mental RFC limitations.  Specifically, she concluded that Clough could perform uncomplicated tasks, have incidental contact with the general public, and tolerate brief encounters like passing someone in a hallway, but could not hold a job that required dealing with the public.  She found that Clough would need an environment where tasks are generally performed in a solitary manner but could tolerate tandem tasks up to ten percent of the workday.  The ALJ also concluded that Clough could "adopt [sic]

to routine changes."[7]  Clough argues that the ALJ's mental RFC determination was not

supported by substantial evidence because she improperly evaluated the medical opinions in the

record.  The court agrees in part and begins by discussing the relevant medical opinions cited by

the ALJ in her mental RFC assessment.

### 1.    Dr. Novelli

Dr. Novelli was Clough's treating psychotherapist for thirteen sessions between

November 2018 and August 2019.  Dr. Novelli also provided opinions about Clough's mental

functioning limitations in January 2019[8] and August 2019.[9]  In her January 2019 report, Dr.

Novelli found that Clough had "marked" (meaning, for purposes of that state-required form, "no

useful ability to function") limitations in remembering locations and work-like procedures,

understanding and remembering short, simple instructions, maintaining attention for extended

periods, sustaining a routine without frequent supervision, making simple work-related

decisions, and performing at a consistent pace.[10]  Dr. Novelli also found that Clough was unable

to work at that time.

By August, Dr. Novelli opined that Clough's limitations had worsened.  She found that

Clough had "extreme" (meaning, complete inability "to function in this area independently,

appropriately, effectively, and on a sustained basis") limitations in sixteen categories.  She also

---

[7] Tr. 17.  It appears the ALJ meant to say "adapt to routine changes."

[8] Dr. Novelli completed a "Statement of Capabilities" form for Clough in connection with her participation in New Hampshire's Financial Assistance for Needy Families program.  Tr. 608.

[9] At Clough's attorney's request, Dr. Novelli completed a "Mental Impairment Questionnaire" for Clough.  Tr. 790.

[10] Tr. 609.

found "marked" (meaning, "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited") limitations in twelve categories, and a moderate limitation in one category (ability to adhere to basic standards of neatness and cleanliness).[11] She further found that Clough's impairments would cause her to be absent from work for more than four days per month.[12]

The ALJ concluded that Dr. Novelli's treatment notes were not relatively supportive of "debilitative mental health symptoms."[13]  She also found Dr. Novelli's opinions unpersuasive because they were not well explained, inconsistent with the record as a whole, and not supported by Dr. Novelli's treatment records for Clough.  The ALJ was correct to not adopt Dr. Novelli's findings of "extreme" limitations.  There was no evidence to support the conclusion that Clough was completely unable to function in sixteen different areas, and Dr. Novelli rendered her opinions in check-the-box type forms, which are entitled to less weight if accompanied by little explanation, as here.  Gould v. Astrue, No. 11-cv-485-SM, 2012 WL 5378967, at *5 (D.N.H. Oct. 31, 2012) (McAuliffe, J.) ("[A] treating provider's opinion may be entitled to less weight when it is in a 'worksheet' or checklist format, unaccompanied by explanation.") (citing Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004)).  The ALJ was thus correct to discount those findings, and Clough does not argue otherwise.  She instead argues that the ALJ erred in weighing the other medical opinions in the record in light of Dr. Novelli's findings and

---

[11] Tr. 792-93.

[12] Tr. 794.

[13] Tr. 21.

ultimately finding Clough's mental limitations "moderate."[14]  The court next addresses these other medical opinions.

### 2.    Drs. Prescott and Pelletier

In assessing Clough's mental RFC, the ALJ also considered the opinions of consultative examiner Dr. Prescott[15] and non-examining reviewer Dr. Pelletier.  Dr. Prescott comprehensively examined Clough in September 2018 and diagnosed her with PTSD.  He found three notable limitations in Clough's level of functioning.  First, he found that Clough did "not appear able to be around others in a typical work setting without considerable distress.  Given her sensitivity, she would not be expected to take negative feedback about her performance well."  Next, Dr. Prescott found that Clough appeared "able to focus attention on basic work activities for short to moderate periods."  And third, he found that, "[g]iven her mood and anxiety," she did "not appear able to effectively regulate emotions or maintain well-being in a typical work setting on a consistent, sustained basis, especially if much interaction was required."[16]  The ALJ found these limitations supportable and consistent, except for Dr. Prescott's limitation on Clough's adaptive functioning limitation or ability to respond to stress.  She deemed these latter limitations unsupported by Dr. Prescott's examination as well as Clough's counseling notes with Dr. Novelli.  She also found them inconsistent with Clough's reported daily and weekly activities.

In March 2019, Dr. Pelletier reviewed Clough's mental health treatment records and Dr. Prescott's examination report in connection with Clough's application with the State of New

---

[14] Doc. no. 9-1, at 19-21.

[15] "A consultative examination is a physical or mental examination or test purchased for [a claimant] at [the SSA's] request."  20 C.F.R. § 416.919.

[16] Tr. 591.

Hampshire application for Medicaid benefits.[17]  Dr. Pelletier completed a "Mental RFC Worksheet" for Clough with a detailed narrative summary of his findings.  He concluded that Clough had "probable moderate limitations in concentration and pace, especially in social contexts or with any social demands; and in her ability to work near and with others without increased anxiety and distractibility, adaptability to change and social demands, and ability to respond appropriately to supervisory criticism."[18]  "Moderate" limitations for purposes of Dr. Pelletier's state-level review meant that Clough's "capacity to perform the activity [was] impaired"; the second-most-severe limitation behind "marked."  "Marked" limitations for purposes of state Medicaid eligibility meant the "individual cannot usefully perform or sustain the activity."[19]  New Hampshire's Department of Health and Human Services approved Clough's Medicaid benefits application in part based on Dr. Pelletier's review.  The agency's decision noted that "RFC mental Dr. Pelletier indicate[d] applicant [was] not capable of basic unskilled work in the competitive labor market," and Dr. Pelletier signed the decision.[20]  The ALJ found Dr. Pelletier's opinion "persuasive to the extent it [was] consistent with the residual functional capacity."[21]

---

[17] Tr. 797.

[18] Tr. 801.

[19] Tr. 800.

[20] Tr. 802-04.  Clough argues that the ALJ improperly ignored this finding.  The court disagrees. Dr. Pelletier never concluded in his narrative report that Clough was incapable of basic unskilled work.  In fact, the state agency rendered this decision and deemed Clough disabled for purposes of her Medicaid application.  "Decisions by other governmental agencies," however, are "inherently neither valuable nor persuasive" and the ALJ was therefore not required to consider the New Hampshire Disability Determination Unit's conclusions in her decision.  20 C.F.R. § 416.920b(c)(1).

[21] Tr. 24.

### 3.    Dr. Jamieson

Lastly, the ALJ relied on state agency consultant Dr. Jamieson's October 2018 "Mental Residual Functional Capacity Assessment" in determining Clough's mental RFC.  Dr. Jamieson did not examine Clough, but reviewed her medical records at the time and the administrative record, including Clough's SSI application.  He rated her limitations "moderate" across the board.[22]  He further explained that Clough "would be expected to work a normal eight hour workday/forty hour work [week] doing simple work in a semi-isolated work environment within acceptable tolerances" and was "capable of brief encounters with co-workers and dealing with simple changes in the work setting."[23]  Dr. Jamieson based these opinions primarily on the fact that Clough had not sought counseling or other mental health treatment in the past and was allegedly not a reliable reporter.  The ALJ found Dr. Jamieson's opinions persuasive and similarly found only moderate limitations in Clough's mental functioning.  She essentially adopted the same limitations as Dr. Jamieson in Clough's RFC, albeit with slightly different terminology.[24]

### C.    Clough's arguments

Clough argues that the ALJ erred in weighing the relative persuasiveness of these medical opinions and ultimately adopting a mental RFC that was nearly identical to state agency consultant Dr. Jamieson.  She first contends that the ALJ's reliance on Dr. Jamieson was misplaced because at the time Dr. Jamieson rendered his opinion, Clough had not started mental

---

[22] Tr. 89-91.

[23] Tr. 91.

[24] Tr. 17.

health counseling with Dr. Novelli, begun seeing her primary care physician Dr. Stettmeier, or received a fibromyalgia diagnosis from Dr. Janjua.  Dr. Jamieson also did not have Dr. Pelletier's March 2019 evaluation to rely upon.  "If the state agency consultant reviewed only part of the record, the opinion cannot provide substantial evidence to support [an] ALJ's residual functional capacity assessment if later evidence supports the claimant's limitations." Sanford v. Berryhill, No. 17-CV-246-JL, 2018 WL 4350251, at *8 (D.N.H. Sept. 12, 2018) (quoting Ledoux v. Acting Comm'r, Soc. Sec. Admin., No. 17-cv-707-JD, 2018 WL 2932732, at *4 (D.N.H. June 12, 2018) (DiClerico, J.); see also Jessica S. v. Kijakazi, No. CV 21-75MSM, 2022 WL 522561, at *3 (D.R.I. Feb. 22, 2022) ("Relatedly, it is error for an ALJ to deny benefits in reliance on a consulting or a non-examining expert physician or psychologist who, despite expertise, was not privy to parts of the medical record that evidence worsening or that support the claimed limitations.").

Dr. Novelli's treatment records and opinions support greater mental limitations than what Dr. Jamieson recommended.  Dr. Novelli's records also support a finding that the pain Clough experienced from her fibromyalgia negatively impacted her mental health and functioning. Clough reported debilitating pain from fibromyalgia at almost every appointment with Dr. Novelli, and reported sadness upon learning of her fibromyalgia diagnosis.[25]  Again, Dr. Jamieson had neither these treatment records nor Dr. Janjua's evaluation and fibromyalgia diagnosis[26] at the time of his assessment.  Dr. Novelli's treatment and Dr. Stettmeier's treatment

---

[25] Tr. 616.

[26] On referral from Dr. Stettmeier, Dr. Janjua, a rheumatologist, evaluated Clough in February 2019 and diagnosed her with fibromyalgia.  Tr. 602.  The ALJ recounted Dr. Janjua's evaluation in her RFC assessment.  She also included fibromyalgia as a severe medically determinable impairment at step two of the sequential analysis.  Tr. 14.

records[27] also significantly undercut the primary basis for Dr. Jamieson's opinion, that is, Clough's lack of mental health treatment (or general medical treatment) prior to her SSI application date and her underwhelming reporting of psychological limitations.[28]

The ALJ failed to consider this subsequent evidence and its potential impact on Dr. Jamieson's opinions.  Instead, she found that Dr. Jamieson "reviewed an extensive amount of medical evidence and provided extensive rationale to support his findings."[29]  This was error. See 20 C.F.R. § 416.920c(c)(5) (When considering a medical source's familiarity with the other evidence in a claim, the ALJ must "consider whether new evidence [she] receives after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive.").  It is in fact unclear what "extensive" medical evidence Dr. Jamieson reviewed because there were few mental health treatment records or evaluations available at that time, and Dr. Jamieson did not evaluate Clough.  He instead appears to have simply concluded that Clough was exaggerating her reported mental limitations.

Dr. Pelletier's subsequent evaluation and opinions also support greater limitations than what Dr. Jamieson recommended and the ALJ imposed.  The ALJ appears to have focused on Dr. Pelletier's use of the word "moderate" to describe Clough's limitations, however, as noted above, "moderate" for purposes of the state Medicaid determination was not the same as "moderate" for SSI purposes.  In fact, Dr. Pelletier's moderate limitations were more akin to

---

[27] Dr. Stettmeier completed a screening evaluation for depression and found that Clough had "moderate depression" as of early December 2018.  Dr. Jamieson does not mention depression at all in his evaluation.

[28] Tr. 91.

[29] Tr. 24.

"marked" limitations in the SSA disability context and thus more severe than Dr. Jamieson's suggested moderate limitations. It was therefore error for the ALJ to find Dr. Jamieson's opinions more persuasive than Dr. Pelletier, when Dr. Pelletier had the benefit of a more complete record and imposed more restrictive limitations.

A state agency consultant's opinion that is based on an incomplete record may still be entitled to persuasive weight if the ALJ rejects the subsequent evidence for independent reasons. See Martinez-Lopez v. Colvin, 54 F. Supp. 3d 122, 137 (D. Mass. 2014) ("[T]he fact that a State agency consultant 'did not have access to all of the records . . . does not prevent the ALJ from assigning significant weight to [her] assessment if the ALJ conducted an independent review of the evidence, which included treatment notes the consultant had not considered.'" (quoting Carter v. Astrue, 886 F. Supp. 2d 1093, 1112 (N.D. Iowa 2012))). This principle does not render the ALJ's error in assigning persuasive weight to Dr. Jamieson's opinion harmless. While the ALJ may have correctly rejected Dr. Novelli's opinion that Clough had extreme limitations in certain mental functioning categories, her decision inadequately explains whether and why she rejected Dr. Novelli's opinion that Clough also suffered from several marked limitations. Dr. Novelli's opinions as to Clough's marked limitations were consistent with Dr. Prescott and Dr. Pelletier's opinions, so the ALJ's rejection of Dr. Novelli's "marked limitation in adapting and managing oneself" on consistency grounds is not supported by substantial evidence.

The ALJ also did not discredit the earnestness of Clough's reported mental impairments during her treatment with Dr. Novelli or the fact that Clough was seeking mental health treatment. She only found that Dr. Novelli's treatment notes were not relatively supportive of "debilitating mental health symptoms."[30] Debilitating mental health symptoms, however, would

---

[30] Tr. 21.

seem to put Clough in a category of extreme limitations.  Dr. Novelli's treatment records, while not sufficient evidence to show extreme, debilitating limitations, could, however, support a finding of marked limitations, which could change the result at step three or lead to a more severe mental RFC assessment.  Moreover, the ALJ did not reject Dr. Pelletier's subsequent opinions (which are in fact inconsistent with Dr. Jamieson's opinions and the RFC determination), but instead misinterpreted them.

In addition to improperly giving Dr. Jamieson's persuasive weight, the ALJ erred by failing to independently consider the degree to which Clough's fibromyalgia could have impaired her mental functioning.  See SSR 12-2P, 2012 WL 3104869 (July 25, 2012) ("People with [fibromyalgia] may also have nonexertional physical or mental limitations because of their pain or other symptoms.").[31]  The court thus cannot conclude that Dr. Jamieson, with the benefit of Dr. Stettmeier, Dr. Janjua, and Dr. Novelli's treatment records and Dr. Pelletier's evaluation, would not have changed his opinion on Clough's mental limitations.  In the absence of opinions from an independent medical expert who reviewed the entire record, the ALJ's adoption of Dr. Jamieson's opinion was not supported by substantial evidence.  See Jessica S., 2022 WL 522561, at *3 (citing Hall v. Colvin, 18 F. Supp. 3d 144, 152 (D.R.I. 2014)) ("[W]ithout procuring testimony from a medical expert who has interpreted the entire medical file, the ALJ is substituting [her] lay judgment for a necessary expert medical opinion" and her decision "is subject to remand because it is not supported by substantial evidence.").

The ALJ's rejection of Dr. Prescott's more-severe adaptation limitation was likewise not supported by substantial evidence.  The ALJ found this limitation unpersuasive because it was based on a one-session examination, inconsistent with Clough's own reports of daily living

---

[31] The Commissioner offers no response to this argument.

activities, and there was "little to no evidence in counseling session notes describing deficits in adaptive functioning or abnormal mood or behavior in responding to stress." But the ALJ found Dr. Prescott's other limitation opinions – which were similarly based on a one-session examination – persuasive and "supported by his clinical findings on mental status exam."[32] Dr. Prescott's adaptive functioning limitation was also consistent with Dr. Pelletier's limitation in the same category.

Furthermore, he ALJ's characterization of Dr. Novelli's counseling notes is inaccurate. The notes reflect reported difficulty in focusing, concentrating, forgetfulness, struggling to stay on task, and retaining information.[33] Clough also missed at least one appointment with Dr. Novelli and reported missing other appointments at the hearing. While the treatment notes do not use the word "adaptation," all of these reported impairments can affect a person's ability to adapt to changes, or regulate her emotions, in a workplace. In addition, the fact that Clough maintains a consistent daily living routine does not necessarily mean that her adaptive functioning is normal. It could simply mean that she does not put herself in situations that require significant adaptive functioning. Had the ALJ properly considered Dr. Prescott's opinion, it could have resulted in a more restrictive adaptive functioning limitation in Clough's RFC.

---

[32] Tr. 23. Dr. Prescott's role as an independent consultative examiner enhances the relative persuasiveness of his opinions. 20 C.F.R. § 416.920c(c)(3),(4) (factors to consider include the relationship between the provider and the claimant and the specialization of the provider); § 416.920c (c)(3)(i)-(v) (other factors include the length, purpose, and extent of the treatment relationship, whether the provider examined the claimant, and the frequency of any examinations).

[33] See Tr. 616, 618, 621. The ALJ appears to have almost entirely disregarded the impact of Clough's PTSD symptoms (flashbacks, lack of sleep, violent nightmares) on her ability to concentrate and maintain attention.

The court cannot determine based on the vocational expert's testimony that any alleged errors in determining Clough's mental RFC were harmless.  Had the ALJ found more-restrictive limitations in adaptive functioning, concentration, persistence, and maintaining pace, it is not clear to the court that substantial jobs existed in the national economy that Clough could still perform.  For example, if Clough was unable to maintain well-being in a typical work setting, effectively regulate her moods on a consistent basis, take negative feedback, or adapt to routine change and social demands, it could affect her attendance and lead to unscheduled absences. The vocational expert testified that as few as one unexcused absence a month "would exceed most employers' tolerance[s] for unskilled jobs."[34]  According to the expert, Clough could have no more than six unexcused absences in a year to maintain her position.[35]

Similarly, Clough's ability to concentrate, focus, persist and maintain pace in the workplace would also be more severely limited based on a proper consideration of the medical opinion evidence as to her mental limitations, as well as the impact of her fibromyalgia pain.  If these limitations took her off task for up to one third of an eight-hour workday, that too would preclude full-time employment at any exertional level.[36]  The court therefore cannot conclude on this record that the ALJ's step-five determination would not have changed had she adopted more restrictive mental RFC limitations.  That will be for the ALJ to decide on remand.  Higgins v.

---

[34] Tr. 67.  The ALJ asked Dorval: "If due to symptoms, an individual had unscheduled absences of at least two days a month on a continuing basis, would that limitation alone preclude substantial gainful activity on a competitive basis?"  He answered: "It would preclude all full time work, yes."  Id.

[35] Id.

[36] Id. ("Q:  Just in relation to staying on task, Mr. Dorval . . . if the individual were off task up to one third of, of an eight hour workday, how would that affect your opinion regarding the jobs you identified, or any other work?  A:  That person wouldn't be able to maintain a full time job at any exertional level.").

Saul, No. 18-CV-1136-LM, 2020 WL 91059, at *4 (D.N.H. Jan. 7, 2020) (McCafferty, C. J.)

("Therefore, because it is the task of the ALJ, not this court, to resolve conflicts in the evidence

and determine whether a claimant is disabled, this court remands the case to the ALJ." (citing

Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981))).  Because the

mental RFC "underpinning the ALJ's decision . . . is not supported by substantial evidence," the

court remands the case to the SSA under the fourth sentence of 42 U.S.C. § 405(g) for further

proceedings consistent with this decision.  Sanford, 2018 WL 4350251, at *8.

### D.    The ALJ's physical RFC determination

Because the court finds that the ALJ's mental RFC limitations are not supported by

substantial evidence, it need not address whether the ALJ also committed error in her physical

RFC evaluation or whether any errors were harmless.  The court notes, however, that based on

its thorough review of the record, the ALJ's rejection of Dr. Phelps' October 2018 opinions does

not appear to be supported by substantial evidence.

## IV.    <u>Conclusion</u>

For these reasons, the Commissioner's motion to affirm[37] is DENIED and Clough's

motion to reverse and remand[38] is GRANTED.   The clerk shall enter judgment accordingly and

close the case.

---

[37] Doc. no. 11.

[38] Doc. no. 9.

SO ORDERED.

_____
Joseph N. Laplante
United States District Judge

Dated:   March 24, 2022

cc:     D. Lance Tillinghast, Esq.
        Daniel S. Tarabelli, Esq.